[Civ. No. 1358.    Third Appellate District.—June 8, 1915.]

ANNA PETERSON, as Administratrix of the Estate of Albin
    Peterson, Deceased, Appellant, v. EDWARD BECK and
    MARTIN PETERSON, Defendants: MARTIN PETER-
    SON, Respondent.

NEGLIGENCE—ACTION FOR DAMAGES—DEATH OF JOURNEYMAN PAINTER—
    CONTROL OF WORK AND SELECTION OF APPLIANCE BY DECEDENT—
    PROPER NONSUIT.—A nonsuit is properly granted in an action for
    damages for the death of a journeyman painter from falling in
    some unknown manner to the bottom of a light-well while engaged
    in taking down the "falls" which had been used in painting the
    well, where it is shown by the evidence that the deceased was a man
    of more than twenty-five years' experience in his occupation, that
    he had the full management of the job and that the plank from
    which he fell was an arrangement of his own selection, which he
    had used instead of a ladder suggested by the defendant for the
    purpose.

ID.—MASTER AND SERVANT—FURNISHING SAFE APPLIANCES.—The rule
    which requires a master to provide a safe place and safe appliances
    for the servant has no application when the place at which the work
    is to be done, or the appliances for doing the same, are to be pre-
    pared by the servant himself.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.    John Hunt, Judge.

The facts are stated in the opinion of the court.

Hamilton A. Bauer, for Appellant.

Chickering & Gregory, and Winfield Dorn, for Respondent.

BURNETT, J.—The appeal is from a judgment of nonsuit
in an action for damages for the death of the intestate, Albin
Peterson.    He was killed as the result of a seven-story fall in
a light-well of the Colonial Hotel on Bush Street, San Fran-
cisco.    He was an experienced journeyman painter and at the
time of his death was working for his brother, the respondent,
who was a contracting painter.    The latter had contracted
for the entire job of painting said hotel and the deceased
acted as foreman in the work.    The management of the job
was left entirely in the decedent's hands.    He directed the

work of all the men, numbering eight, told them what to do and how to do it and the respondent did not interfere with his control although making suggestions to the foreman as to the easiest way to do portions of the work. The decedent had "the privilege of doing the work as he pleased." The bath rooms in said hotel were located on an inside light-well. The light-well was five feet long, three feet wide and the only entrances to it were through the doors of the various bath rooms. Over the top of the light-well there was a cover—a skylight fastened down. The ropes used by painters in the familiar apparatus for painting a building are called "falls" and the plank on which the painter sits is lowered or raised by the use of a block and tackle operating each of the "falls." In the light-well in question, a scantling had to be placed underneath the skylight to support the falls. The top of the light-well was too high to be reached by standing on the window-sill of the bath room on the top floor and the respondent had told the decedent that the easiest way to put the scantling in place was to "stick a ladder through the window" from the window sill to the wall on the opposite side of the light-well. The decedent did not use the ladder but himself selected from the stock of painters' supplies of the respondent a plank to be taken to the building for the purpose. This was a regular painter's plank about ten feet long, one inch thick and ten or twelve inches wide. The decedent put some cleats on the plank on which to rest his feet. This plank was used in putting up the scantling and rigging for painting the light-well in which the accident occurred, and another light-well in the building was handled the same way. On the morning of the accident the deceased informed respondent that in placing said scantling he used the plank because the ladder was too wide. Prior to this, respondent did not know that the plank had been so used. Decedent had not asked respondent, whether he should use the plank, but went ahead and used it, nor did he let respondent know that there would be any further occasion for using the plank.

At the time of the accident, the entire job had been completed and decedent was taking down the "falls" which had been used in painting said light-well and he was standing on said plank. Decedent had told one of the painters, Carl Wuickboum, to help him take down the falls. To do so they put up the plank, one end resting on the window sill and the

other on the opposite side of the light-well.   The angle thus formed by the plank was stated by Wuickboum to be about forty-five degrees, although it would appear that the incline must have been steeper than that.   Both sashes of the window were then pulled down and the decedent climbed out into the light-well over the top of the window and stepped upon the plank.   His helper, Wuickboum, remained in the bath room and took in the slack rope as it was passed to him from the outside. One fall had already been taken down and one block and tackle had been passed to Wuickboum before the accident occurred. Only one man could work on the plank and the decedent did this work without asking any one else to do it.   At the time of the accident he was engaged in taking in the second block and tackle.   Wuickboum, in the bath room, five or six feet away, could not see the decedent at all, the top sash of the window, as stated, having been pulled down.   About ten minutes after decedent had gone out through the window, Wuickboum heard a scream and "a kind of drop" and saw the plank fall off.   He ran down stairs and found the decedent at the bottom of the light-well.   Wuickboum knew that the plank fell but could not say whether it or the decedent fell first and he did not know how it came to fall.   Nothing broke, neither the plank nor any part of the building.

The foregoing, substantially as stated by respondent, is a fair presentation of the facts disclosed by the record.

These salient features, probably, deserve special consideration: 1. The deceased was a man of mature age and for more than twenty-five years he had been engaged in the occupation in which he was employed at the time of his death.   2. The plank which he used was selected and rigged with footholds by him and, with the aid of a helper acting under instructions, placed by him in position.   It was not the appliance that respondent had furnished, nor was it the one which respondent had even suggested.   3. There is nothing to show just how the accident happened.   We are left to conjecture as to the proximate incidents.   It is true that decedent was in a somewhat dangerous position but in view of the evidence no one can say that if he had been careful the accident would have occurred.

With this situation before us we can perceive no ground for holding the defendant legally responsible for the accident.

The particular acts of negligence charged in the complaint are: 1. Failing to provide a safe place of work for decedent; 2. Providing him with an unsafe, dangerous, and defective appliance to work with; and, 3. Violating an ordinance of the city and county of San Francisco requiring the building of safe scaffolds upon which workmen are compelled to perform their labor.

We agree with respondent that the first of these considerations is not involved at all. The hazard was in the use of the plank placed as has been described. Strictly speaking, this was an "appliance" rather than "a place to work." The distinction is made clear in the case of *Butler* v. *Townsend,* 126 N. Y. 105, [26 N. E. 1017], wherein the plaintiff's intestate was killed by falling from a scaffold erected as a staging about a vessel for repairing its exterior hull. The court said: "It was a mistake to assume as the duty violated that of providing a safe place for the work of the servants. The staging was not, in the sense of this rule, the place in which the work was to be done, but an appliance or instrumentality by means of or through the aid of which the caulkers were to do their work. . . . The staging, in the present case, was as much an appliance or instrumentality as if it had been. a ladder on some round of which the workman was required to stand in order to do his work, and we shall at least avoid possible confusion if we confine our attention to the exact duty which the master violated if he violated any."

But whether the plank be regarded as a place to work or an appliance or instrumentality, the defendant was relieved of all responsibility for its safety by reason of the fact that the decedent selected and adjusted it himself. The principle is aptly stated in *Callan* v. *Bull,* 113 Cal. 603, [45 Pac. 1020], as follows: "The rule which requires a master to provide a safe place and safe appliances for the servant is applied when the place upon which the work is to be done is furnished or prepared by the master, as in the case of a ship, or a mill, or a factory, or when the machinery or other appliances with which the servant is employed to work are furnished by the master; but it has no application when the place at which the work is to be done, or the appliances for doing the same, are to be prepared by the servant himself. If the appliance is furnished by the master for the purpose of enabling the servants to perform the work on which they are engaged, he is

required to see that it shall be reasonably safe for that purpose; but if the preparation of that appliance is a part of the work which the servant is required to perform, the master is not liable for any defects in its preparation.''

There would seem to be no doubt about the scope of decedent's authority as to the work. It is true that he actually participated in it as a journeyman painter but he had the additional duty of managing the job and directing how it should be done. Considering his experience and his relationship to respondent it is not surprising that such responsibility was thus intrusted to him.

In *Burns* v. *Sennett*, 99 Cal. 363, [33 Pac. 916], it is said: ''While the general rule is as above stated (that an employer must furnish machinery and appliances reasonably suitable and safe for the employee to do his work) still it is well established that the rule does not apply to a case where several persons are employed to do certain work and by the contract of employment, either express or implied, the employees are to adjust the appliances by which the work is to be done.''

In principle the case of *Duffy* v. *Hobbs, Wall & Co.*, 166 Cal. 210, [135 Pac. 1093], is not unlike this. Therein the decedent had been the foreman of the upper floor of a sawmill operated by the defendant and he was killed by falling from a platform running along the side of a conveyor. The fall was due to the breaking away of a railing from its insecure fastening. The duty of keeping it in good order and repair devolved upon the decedent. In reversing the judgment the supreme court said: ''Here it was the duty of Duffy to take care that the railings and posts alongside the conveyor were kept in good order and repair. He had undertaken to perform that obligation for and on behalf of the defendant, who relied upon him to see that it was duly performed. The negligence, if any, which caused the injury, was the failure to examine the post to ascertain if it was decayed or had otherwise become incapable of holding nails and the failure to replace it with a new one—a thing which Duffy himself was under obligation to do. The negligence was his own. It would be unjust to hold his employer liable for the consequences of his own want of care and circumspection.''

In the case of *Newport News Publishing Co.* v. *Beaumeister*, 104 Va. 744, [52 S. E. 627], the plaintiff was injured while

adjusting a printing press in an unlighted pit underneath the press. The plaintiff had entire control of the press and knew the conditions surrounding the same. The court said: "Plaintiff was a man of experience and had entire control of the printing press when he received the injuries for which he sues and no one knew better than he the conditions surrounding and the dangers confronting him when he attempted in the dark to locate the trouble to the ink rollers. As said in the opinion of this court, the absence of the light increased the danger and imposed upon the plaintiff enlarged obligations to exercise due care and caution in the performance of his duty."

Here it was the duty of the foreman to adjust the appliance and if the accident was due in any manner to defective adjustment it was the fault of the decedent.

As to the appliance itself, it is probable that a ladder would have been safer but in the absence of any knowledge on the part of respondent that the decedent was in need of one, the former could not justly be held liable for consequences flowing from the voluntary use of the plank by the decedent. Besides, as already stated, there is nothing to show that the plank was not a safe and proper appliance to be used in such a small light-well. If it had been placed carefully and the decedant had stood firmly upon it and had done his work circumspectly, in all human probability no accident would have occurred. It is likely, as suggested by respondent, that the decedent, in reaching for the rigging, lost his balance and, in falling, dislodged the plank. But whatever may have happened we discover no breach of duty on the part of respondent. Of course, as stated by Judge Cooley, in *Sjogren* v. *Hall*, 53 Mich. 274, [18 N. W. 812] : "After an accident occurs it is generally easy to show how it might have been avoided." This might have been avoided, possibly, if a scaffold had been erected in the light-well. In that event decedent would not have taken down the "falls" since none would have been used, but it appears that they are ordinarily used in painting, the only difference in the present instance being that a scantling was required across the light-well in consequence of the skylight not being removable. This circumstance, however, had manifestly no connection with the accident. We think it cannot be said that respondent was derelict in not furnishing a scaffold under the circumstances

appearing herein. He had a right to leave the foreman at liberty to follow the usual custom in painting such places. He did, however, as we have seen, suggest the use of a ladder and no blame can be attached to him because a ladder was not used. If the ladder was too wide and he desired a suitable one, since he was in charge of the work it was the duty of decedent to notify respondent that the particular ladder at hand was insufficient. But, without demanding any other appliance or informing respondent that others were needed, he proceeded to the work with an appliance of his own selection.

In this respect the case is somewhat similar to *Yearsley* v. *Sunset Telephone Co.*, 110 Cal. 236, [42 Pac. 638], in which the plaintiff, a lineman, was injured by the giving way of a limb of a tree on which he was standing while stretching a wire. He was nonsuited in the court below. It was claimed that defendant was guilty of negligence in furnishing a defective appliance. The supreme court, in affirming the judgment, said: "Even conceding it an appliance, and a defective one, it was one of plaintiff's own choosing, and he must bear the burdens resulting from a bad exercise of judgment upon his part. . . . Without demanding further appliances of any kind or informing defendant that others were needed, he proceeded with the work and while so engaged called to his aid other additional appliances of his own selection. He stands in the same position as though he had chosen for his use a frail plank or a rickety ladder rather than a pepper tree."

The third contention as to the violation of the ordinance, seems not to be urged very strongly. Said ordinance provides: "It shall be unlawful for any person, firm or corporation to erect, maintain, suspend, swing or use or cause to be erected, maintained, suspended, swung or used, any scaffold or staging unless the same be of sufficient strength to support the weight placed thereon and of sufficient width to prevent any person working thereon, or any materials placed thereon, from falling."

The plank was not a scaffold. As said by respondent: "To regard the plank as a scaffold would require that a box, or any piece of timber upon which a workman might stand to elevate himself for a temporary purpose in the course of the work should be regarded as a scaffold. It would mean that every piece of timber used in the building of a scaffold or

27 Cal. App.—37

staging would itself be a scaffold, while the carpenter was standing upon it to place the next piece of timber above him.''

Again, the plank seems to have been strong enough as it did not break and there is no evidence that its width had any causal connection with the fall of the decedent. Besides, as already seen, it was not furnished or caused to be furnished by respondent, the decedent having selected and used it on his own responsibility.

The whole situation is concisely covered, as we conceive it, in the following opinion by the Hon. John Hunt, rendered in granting the motion for nonsuit:

"The Roseberry Act, so called, section 1, abridging it in the reading, provides that in actions like this, to recover damages, for personal injuries sustained by the death of an employee, that the employer shall be liable for damages for want of ordinary or reasonable care on his part, or of any officer, agent, or servant of the employer. Then it says: 'The fact that such employee may have been guilty of contributory negligence shall not bar a recovery where his contributory negligence was slight, and that of the employer was gross in comparison.' Now, I know of no evidence in this case which shows, or tends to show, that the defendant here, Martin Peterson, was guilty of any act of negligence on his part.

"All the jury know is that this man, the foreman, selected this way, which he said was the only way in which the work could be performed, and that he started to perform it and then fell, and his death occurred. That is all we know of the facts. Whether he slipped from there or not, we do not know. It is difficult to understand, in view of the testimony, how it did occur, because, if, as stated, one end of the plank was braced against the projection of the window sill, and the other up against the side of the shaft, it would be impossible for it to fall, unless it slipped sidewise, in some manner or other, or unless the deceased slipped and fell from it accidentally. In any event, there is no evidence here to show negligence upon the part of the defendant, Martin Peterson.

"It is true that an employee no longer has to assume the risks or hazards incident to his employment. But, while that is true, it is equally true that no recovery can be had against an employer who is guiltless of any act of negligence. Of course, injuries may occur as the result of inevitable accident, in which the party injured or his heirs unfortunately

are remediless, under the provisions of the law, aside from the provisions relating to arbitration.

"The point made in this case by Mr. Williams in support of his motion for a nonsuit seems to be well taken. I thought that perhaps there might be other evidence, and more evidence that could be submitted to the jury to explain the cause of the death, the immediate cause of the death, or fall, but plaintiff's counsel is in such a situation where, perhaps unfortunately for him, he cannot supply that evidence. But that misfortune that he suffers cannot be visited upon the head of the defendant where, as here, there is no evidence whatever of any act of negligence upon his part."

We think the conclusion was sound and the judgment is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 8, 1915, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 5, 1915.