[S. F. No. 7111.   Department One.—February 28, 1917.]

ELLA W. ALBERT, as Administratrix of the Estate of Frank H. Albert, Deceased, Respondent, v. McKAY & CO. (a Corporation), Appellant.

NEGLIGENCE—MASTER AND SERVANT—SAFE PLACE TO WORK.—The duty of an employer to furnish his employee with a reasonably safe place to work is limited to the premises where the employee is required to be, for the purposes of his employment.

ID.—STARTING OF MACHINERY—EMPLOYEE WORKING IN WRONG PLACE.— If an employee, while working in a place where he was not required to be, was injured by the starting of the machinery, such starting would not constitute negligence in the absence of proof that the employer knew or had reason to know that he was in a position of danger.

ID.—PREPARATION OF PLACE AND APPLIANCES BY EMPLOYEE.—The rule requiring the master to provide a safe place for the servant does not apply when the place at which the work is to be done, or the appliances for doing the same, are to be prepared by the servant himself.

ID.—EMPLOYEE IN LUMBER-MILL—NEGLIGENCE NOT ESTABLISHED.—In this action to recover for the death of an employee in a lumber-mill, occasioned by his body being drawn against and crushed by a rapidly revolving shaft, the evidence is held insufficient to establish negligence on the part of the employer either in failing to furnish

a safe place in which to work, or in starting the machinery after the employee had begun to work thereon.

ID.—RES IPSA LOQUITUR—DOCTRINE INAPPLICABLE.—Where there was no evidence that the machinery was started after the employee had begun to work thereon, and the undisputed testimony showed that it had not been started at all, and therefore could not have been started negligently, the doctrine of *res ipsa loquitur* is inapplicable.

EVIDENCE—IMPEACHING TESTIMONY—INCONSISTENT STATEMENTS.—When a witness is impeached by proof of prior inconsistent statements, the effect is merely to discredit him as a witness. The former statements made by him are incompetent for any other purpose, and do not constitute evidence of the truth of the facts so stated by him.

APPEAL from a judgment of the Superior Court of Humboldt County. Clifton H. Connick, Judge.

The facts are stated in the opinion of the court.

Denver Sevier, Sevier, Coonan & Ricks, and Denson, Cooley & Denson, for Appellant.

Puter & Quinn, for Respondent.

SLOSS, J.—For some years prior to March 10, 1913, Frank H. Albert had been in the employ of the defendant, McKay & Co., a corporation owning and operating a lumber-mill at Eureka, in Humboldt County. On the day named, Albert's clothing was caught in an appliance attached to one of the shafts used in the transmission of power for the mill machinery, his body was drawn against the rapidly revolving shaft, and he received injuries which caused his death. He was survived by a widow and a minor child. This action was brought by the widow, as administratrix of his estate, to recover damages for the alleged negligent killing of her intestate.

Upon the trial the plaintiff recovered a verdict in the sum of eight thousand dollars, and judgment was entered accordingly. The defendant appeals from the judgment, bringing up the evidence by means of a bill of exceptions.

Albert's employment was that of a saw-filer. He worked in a filing-room, which was on the sawing or mill floor of defendant's mill. The engines, together with the shafts, pulleys, and belts for the transmission of power, were located upon a lower floor. In the filing-room were several ma-

chines, which were used by Albert in his work. These were driven by a belt running through the floor and connecting with a pulley attached to a shaft running under the floor of the filing-room. One end of this shaft was set in a box or bearing. At the point where the shaft entered the box, a collar was attached to the shaft by means of a set-screw, which projected five-eighths of an inch beyond the collar. Some twelve or thirteen inches from this collar a pulley, with a diameter of thirty inches, was attached to the shaft. The shaft in question received its power from the main shaft driven by a belt from the engine. A "tightener" was used in transmitting power to the main shaft. The shaft was set in motion by lowering the tightener so as to bring it in contact with a belt connecting with the engine. Raising the tightener stopped the main shaft and with it the shaft which furnished power to the machines in the filing-room.

The precise way in which the fatal accident occurred was a subject for inference from the circumstances shown. No one was with Albert when he was caught in the machinery. A fellow-employee found Albert's lifeless body hanging on the shaft, between the box holding the end of the shaft and the pulley which we have described as being twelve or thirteen inches away.

The complaint was in three counts. In all three it was charged that Albert had occasion, in the performance of his duties, to reach across the shaft in order to adjust one of the machines used by him in the filing-room above, this machine being held in place by means of bolts passing through holes in the floor, and fastened by nuts attached and tightened from below. The first count alleged that Albert's clothing was caught in the protruding set-screw which has been described. The averment was that the defendant negligently left this set-screw unguarded, and that this negligence was the cause of Albert's death. The set-screw, it was alleged, could not be seen when the shaft was in motion. The theory underlying this cause of action was that Albert undertook to do his work of adjustment while the shaft, and the set-screw upon it, were revolving.

The second and third counts were framed on the theory that the shaft was not in motion when Albert began, but that while he was engaged in his work, the shaft was set in motion through the negligence of the defendant. The second count

alleges that the starting of the machinery was occasioned by the act of the defendant in negligently dropping the tightener on the belt, thereby causing the shaft to revolve. The third charges that the appliances for holding the tightener in place were improperly constructed, and that by reason thereof the tightener fell on to the belt and thus started the machinery in motion.

At the close of the plaintiff's testimony defendant moved for a nonsuit. The motion was granted as to the third count, there being no evidence tending to show that the tightener had dropped as charged in this count. The main question raised by the appeal is whether the verdict can be sustained on either the first or second cause of action alleged.

The appellant urges with much earnestness that the evidence totally fails to show that Albert was acting within the scope of his employment when he undertook to work in the place where he met his death; that, in fact, the activities in which he was then engaged were undertaken in direct violation of the orders of his employer. This point, if sustained, would answer the plaintiff's claims under both the first and the second count. The negligence charged in the first count is the failure to comply with the employer's duty to furnish his employee with a reasonably safe place to work. The duty is limited to "the premises where the employee is required, for the purposes of his employment, to be." (*Kennedy* v. *Chase,* 119 Cal. 637, 640, [63 Am. St. Rep. 153, 52 Pac. 33, 35].) So, also (referring to the second count), if Albert, while working in a place where he was not required to be, was injured by the starting of the machinery, such starting would not constitute negligence in the absence of proof that the defendant knew or had reason to know that Albert was in a position of danger. There is considerable evidence to the effect that Albert was directed to confine his work to the filing-room and not to go on the floor below except when the mill was not in operation. More specifically, it was testified that he had been forbidden to change the location of the filing-room machinery. But there was evidence of contrary import, and, on the whole case, we think the jury was warranted in concluding that Albert was acting within the scope of his duties in going to the lower floor to fasten the bolts which held the filing-room machinery in place.

But, conceding so much, we must still hold that the evidence totally failed to show any negligence on the part of the defendant. The breach of duty charged in the first count was that the defendant improperly left the set-screw unguarded. That it was so unguarded at the time of the accident is clear. But several witnesses testified that the collar and set-screw had been protected by a guard for a considerable time prior to the accident. The protection consisted of a piece of rubber belting over this part of the machinery, and a drip box or pan under it. Four witnesses so stated, and their testimony is uncontradicted. One of them testified, further, that on the Wednesday or Thursday before the accident (which occurred on a Monday), Albert had borrowed a bar from the witness, and had pried off the belting with it, removing the drip-pan at the same time. This statement was also uncontradicted. The testimony of these witnesses could not be arbitrarily discarded. There was nothing to throw doubt on its credibility. On the contrary, other evidence tended strongly to fortify the probability of the claim that Albert had removed the protective covering in the process of changing the position of the shaft—a change which was actually made a few days before the accident, and was necessary to the moving of the machine in the filing-room. The rule requiring the master to provide a safe place for the servant does not apply when "the place at which the work is to be done, or the appliances for doing the same, are to be prepared by the servant himself." (*Callan* v. *Bull,* 113 Cal. 593, 603, [45 Pac. 1017]; *Peterson* v. *Beck,* 27 Cal. App. 571, [150 Pac. 788].) If the cause of Albert's injury and death was the unguarded set-screw, the condition was one which he himself had brought about, and which could not be charged against the defendant as an act of negligence.

The only remaining basis for sustaining the verdict is that set forth in the second count, i, e., that the machinery was negligently started after Albert had begun to work. Here, too, the evidence totally fails. Testimony of numerous witnesses is unanimous to the effect that the machinery, including the shaft in question, was running before Albert went to the lower floor, and that it was not stopped until the discovery of his body on the shaft. There was no competent evidence in contradiction of this. Two witnesses for plaintiff

testified that immediately after the accident they had met Milotte, the master mechanic of the mill, one of the employees charged with the duty of raising and lowering the tightener, and that Milotte was pale and his voice trembled. To one of these witnesses he had said, "Don't talk about it. I cannot stand it. I am sick," and to the other, "For God's sake, go in and take that man off the shaft." This testimony is relied on by the respondent as tending to show that Milotte had lowered the tightener, thus starting the machinery in motion and causing Albert's death. To give it any such effect would be to indulge the wildest surmise and conjecture. Milotte's words and actions may have indicated no more than the horror and distress which any man might feel on seeing that another had met violent death. They certainly contained no basis for the inference that Milotte had been guilty of any wrong; still less that he had committed the act of negligence described in the complaint. The jury could not view the evidence of Milotte's conduct as overcoming the direct testimony that the machinery was running when Albert approached the shaft, without disregarding the instruction of the court that their verdict "must be based upon a fact, or facts, and not on speculation."

The respondent points to one other item of evidence as tending to show that the machinery was not running when Albert went to work. Among the witnesses who testified that the machinery had been running continuously was one Elener, a blacksmith in defendant's employ. The proper foundation having been laid by cross-examination, the plaintiff sought to impeach him by calling in rebuttal a witness who testified that Elener had said, shortly after the accident, that the machinery had not been running, and that somebody must have left the tightener down after Albert had started working. When a witness is impeached by proof of prior inconsistent statements, the effect is merely to discredit him as a witness. The former statements made by him are incompetent for any other purpose. They do not constitute evidence of the truth of the facts so stated by him. (2 Wigmore on Evidence, sec. 1018; *Keyes* v. *Geary Street etc. R. R. Co.*, 152 Cal. 437, 441, [93 Pac. 88]; *Worley* v. *Spreckels Bros. Com. Co.*, 163 Cal. 60, 71, [124 Pac. 697].)

In the absence of any conflict, the jury had no right to find a verdict based upon the theory that the machinery had been

negligently started after Albert had placed himself in close proximity to the shaft. This is not a case in which such negligence can be inferred under the doctrine of *res ipsa loquitur.* The rule has no application to the facts of this case. The plaintiff charged, in the count under discussion, that Albert's death was caused by the negligent starting of the machinery. If there had been any evidence to show that the machinery was started after Albert took his position near the shaft, it might be said that the mere occurrence of the accident warranted an inference that the defendant had been negligent in setting the shaft in motion. But such inference cannot, of course, be indulged in face of the undisputed testimony that the machinery had not been started at all, and therefore could not have been started negligently. The presumption that Albert himself exercised ordinary care (Code Civ. Proc., sec. 1963; *Crabbe* v. *Mammoth C. G. M. Co.,* 168 Cal. 500, 506, [143 Pac. 714]), relied on by respondent, cannot avail to support the verdict in the absence of any substantial evidence tending to show a breach of duty by the defendant.

The judgment is reversed.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.