[Crim. No. 20519. Oct. 24, 1979.]

In re JOHNNY G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY G., Defendant and Appellant.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Kenneth I. Clayman, Albert J. Menaster, Alan H. Yahr and Stanley Avram Goldman, Deputy Public Defenders, for Defendant and Appellant.

Quin Denvir, State Public Defender, Gary S. Goodpaster, Chief Assistant State Public Defender, Laurance S. Smith and Michael Lee Pinkerton, Deputy State Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Lawrence P. Scherb II, Roger W. Boren and Michael Ash, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

MANUEL, J.—Johnny G., a minor, appeals from an order adjudging him a ward of the juvenile court (Welf. & Inst. Code, § 602) upon a finding that he committed assault with a deadly weapon (Pen. Code, § 245, subd. (a)).

The assault victim, Carlos Herrera, testified through an interpreter that he and Johnny lived three houses from one another. On the evening in question Herrera agreed to do Johnny's laundry for $1. He returned the laundry and began walking home. As he crossed a driveway he noticed two persons at its entrance; moments later he heard footsteps behind him, turned, and was assaulted and beaten by two men. Before losing consciousness he heard one of the assailants say something about missing clothing.

Herrera testified that he did not regain consciousness until after being taken to the hospital. He did not remember speaking to a police officer at the scene of the assault or identifying Johnny as one of his assailants. On cross-examination he said that he did not know who attacked him. When asked if he knew whether any identification he might have made at the time was accurate, he answered: "How can somebody do that if you are unconscious? . . . I don't know. When you are knocked out, how can I say it was him or him?"

On the crucial issue of identity, Herrera's testimony as a whole tended to exonerate Johnny. To begin with, although Herrera knew Johnny and had talked with him shortly before the assault, he testified he did not recognize the voice that spoke of the missing clothing. Second, although Herrera was able to describe his assailants as Latins, 18 to 20 years old, and of substantially different heights, he testified that he did not recognize either of them. Third, when asked to compare their stature with that of the minor herein, Herrera testified that one was taller than Johnny and the other was shorter. Finally, Herrera repeated several times that

from the circumstances it appeared to him the attackers were the two men he passed after he left Johnny's house.

The prosecutor sought to establish Johnny's identity as one of the assailants by introducing an extrajudicial statement assertedly made by Herrera to Los Angeles Police Officer Cooney after the assault. Officer Cooney found Herrera lying near the street with his face covered with blood. Cooney said that Herrera was conscious and coherent, though "a little shook up." Over objection Cooney testified that Herrera told him that a man had approached him on the street and asked him to help move some things out of the latter's house. After they went inside, however, the man accused Herrera of failing to return some of his clothes and beat him with a board until he crawled out onto the sidewalk. Cooney said he pointed at that time to Johnny, who was standing nearby, and asked Herrera in English if that was the man who had attacked him, and Herrera replied "Yes."

Johnny did not testify or present any defense. Following argument, the judge denied Johnny's motion to strike Cooney's testimony regarding Herrera's extrajudicial statement and identification. The judge found that the statement was inconsistent with Herrera's testimony and that Herrera's lapse of memory was partial, not total. The court admitted the testimony as substantive evidence under Evidence Code section 1235.[1]

Johnny contends that the admission of the testimony regarding Herrera's extrajudicial identification as substantive evidence violated the confrontation clause of the California Constitution (Cal. Const., art. I, § 15). He also contends that there was insufficient evidence to support the finding that he committed the assault.

■ We consider the latter contention first since a determination that the evidence is insufficient to support the finding would bar retrial under the federal double jeopardy clause (U. S. Const., 5th Amend.) as recently interpreted by the United States Supreme Court. (See *People* v. *Pierce* (1979) 24 Cal.3d 199, 209-210 [155 Cal.Rptr. 657, 595 P.2d 91]; *Burks* v. *United States* (1978) 437 U.S. 1 [57 L.Ed.2d 1, 98 S.Ct. 2141]; *Greene* v. *Massey* (1978) 437 U.S. 19 [57 L.Ed.2d 15, 98 S.Ct. 2151].) As will appear, we conclude that the contention has merit and accordingly find it

---

[1]Section 1235 provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."

Section 770 requires that the witness be given an opportunity to explain or deny the prior statement at some point in the trial.

unnecessary to reach the question whether the minor's rights under the confrontation clause of the California Constitution were violated.

■ It has long been the rule in this state that "An extrajudicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime." (*People* v. *Gould* (1960) 54 Cal.2d 621, 631 [7 Cal.Rptr. 273, 354 P.2d 865]; see also *People* v. *Belton* (1979) 23 Cal.3d 516, 535-537 [153 Cal.Rptr. 195, 591 P.2d 485] [conc. opn. by Jefferson, J.]; *In re Eugene M.* (1976) 55 Cal.App.3d 650 [127 Cal.Rptr. 851]; Jefferson, Cal. Evidence Benchbook (June 1978 supp.) § 10.1, pp. 131-134.) Since the only evidence connecting the minor with the charged assault was such an identification, the order appealed from cannot stand.

In *People* v. *Gould,* the victim identified the two defendants from a group of photographs shown her shortly after the crime. Defendant Gould admitted complicity when the police confronted him with the victim's photographic identification of him. Defendant Marudas denied any knowledge or involvement, and Gould named someone else when asked about his accomplice. At trial the victim was unable to repeat her earlier identifications. A police officer testified about the earlier identifications, stating that the victim was sure of them at the time.

We held that the evidence of the extrajudicial photographic identifications was properly admitted as independent evidence of identity even though the witness was unable to repeat the identification at trial. We further held, however, that such identification evidence by itself is insufficient to sustain a conviction. An extrajudicial identification that cannot be confirmed by the witness at trial, in our view, was lacking in sufficient reliability and substantiality to form the sole identification evidence on which the conviction was based. We affirmed Gould's conviction since it was supported by evidence of his own admission of complicity as well as by the evidence of the victim's extrajudicial identification. We reversed Marudas' conviction, however, because the only evidence tending reasonably to connect him with the crime was the extrajudicial identification which could not be confirmed at trial.[2]

---

[2] We rejected the assertion that Marudas' statement to the police regarding his whereabouts on the day of the crime—" 'I don't know, but by the time I get to court I will have four or five people to place me where I want to be' "—gave rise to a reasonable inference of attempted concealment or consciousness of guilt which might have supported the conviction. We found this statement clearly distinguishable from those made in other

*Gould* was decided prior to the adoption of the Evidence Code. The drafters of the Evidence Code were aware of *Gould* and discussed the dual nature of its holding in their comments: "Sections 1235 and 1238 codify exceptions to the hearsay rule similar to that which was recognized in People v. Gould . . . . Sections 1235 and 1238 deal only with the admissibility of evidence; they do not determine what constitutes evidence sufficient to sustain a verdict or finding. Hence, these sections have no effect on the holding of the Gould case that evidence of an extrajudicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a criminal conviction in the absence of other evidence tending to connect the defendant with the crime." (Cal. Law Revision Com. com. to Evid. Code, § 1238, West's Unann. Evid. Code (1968 ed.) pp. 284-285.) It is thus clear that the drafters of the Evidence Code did not intend to change the *Gould* rule regarding the sufficiency of evidence to sustain a conviction.

The evidence in this case is insufficient to sustain the order under *Gould.* The only evidence connecting Johnny with the offense is the extrajudicial statement assertedly made by Herrera to Officer Cooney after the assault. At trial Herrera said he was unconscious, did not remember making this statement, and described his assailants as not resembling Johnny. Neither Herrera's acquaintance with Johnny nor Johnny's presence at the scene provides any reasonable support for the adjudication. No consciousness of guilt on the part of Johnny or intimidation of Herrera by him could reasonably be inferred from these factors.[3]

In the absence of other evidence tending to connect Johnny with the assault, the evidence of Herrera's prior inconsistent identification of Johnny was insufficient to sustain the adjudication order.

▮▮ Since the evidence was insufficient as a matter of law to support the finding that the minor committed the offense charged, further proceedings are barred by the double jeopardy clause (U.S. Const., 5th Amend.) under the rule of *Burks* v. *United States, supra,* 437 U.S. 1, and

---

cases where consciousness of guilt could reasonably be inferred from statements of fact that were incredible, later proved false, or contradicted by the defendant's subsequent testimony. (*People* v. *Gould, supra,* 54 Cal.2d at pp. 630-631.)

[3]The remark about missing clothes that Herrera testified having heard during the attack could equally well have come from any other person who had used Herrera's services to do his laundry.

*Greene* v. *Massey, supra,* 437 U.S. 19, applicable in California (*People* v. *Pierce, supra,* 24 Cal.3d at pp. 209-210).[4]

The order appealed from is reversed with directions to dismiss the proceeding.

Bird, C. J., Tobriner, J., Clark, J., and Richardson, J., concurred.

**MOSK, J.,** Concurring.—I agree that on the particular facts of this case—i.e., the prior inconsistent statement identifying the minor was the sole evidence connecting him with the assault—the order must be reversed under the rule of *People* v. *Gould* (1960) 54 Cal.2d 621, 631 [7 Cal.Rptr. 273, 354 P.2d 865]. In many prosecutions, however, such a statement is an important part of the People's case but is not the sole evidence connecting the defendant with the crime, so that the *Gould* rule is not triggered. For the guidance of the bench and bar in those cases, we should also address the contention here made that the admission of a prior inconsistent statement of a witness as substantive evidence violates the confrontation clause of the California Constitution (art. I, § 15).

The record fully supports this contention. As the majority observe, on the crucial issue of identity the testimony of Herrera, the sole eyewitness, tended to exonerate Johnny, the minor herein. On this state of the evidence the prosecutor clearly had not sustained his burden of proving beyond a reasonable doubt (Welf. & Inst. Code, § 701) that Johnny was guilty of the charge. The prosecutor therefore sought to introduce Herrera's extrajudicial statement accusing Johnny of the crime, assertedly made to Officer Cooney. When Johnny objected on the ground of hearsay, the prosecutor told the court the evidence was offered as a prior inconsistent statement. Herrera's statement was then admitted into evidence.

In his opening argument the prosecutor no longer stressed the inconsistencies between Herrera's testimony and his extrajudicial statement;[1] instead, he relied heavily on the substance of that statement as

---

[4]For similar rulings in other jurisdictions, see e.g., *Government of Virgin Islands* v. *Civil* (3d Cir. 1979) 591 F.2d 255, 260 (uncorroborated accomplice testimony); *Pollard* v. *State* (1978) 264 Ark. 753, 756 [574 S.W.2d 656, 658] (same); *Brown* v. *State* (Tex.Crim. 1978) 576 S.W.2d 36, 42-43 (uncorroborated confession).

[1]The prosecutor asserted, for example, that "The story of the attack as he told it to Officer Cooney differs only slightly with the story that Mr. Herrera told on the stand."

proof that Johnny was in fact Herrera's assailant.[2] Johnny thereupon renewed his hearsay objection, but the prosecutor invoked Evidence Code section 1235 as authority for using the statement both to impeach the witness and to establish the truth of the matter asserted. The court permitted the latter use, and in his closing argument the prosecutor again emphasized the contents of the statement as proof of the minor's guilt.[3] The court forthwith found the charge against the minor to be true beyond a reasonable doubt, sustained the petition, and adjudged him a ward.

Until 1967 it was well settled in this state that a prior inconsistent statement of a witness was hearsay and hence inadmissible as substantive evidence of the facts related therein, and could be considered only for the limited purpose of impeaching the witness' credibility. This "orthodox rule" applied equally in criminal prosecutions (*People* v. *Orcalles* (1948) 32 Cal.2d 562, 572-573 [197 P.2d 26]; *People* v. *Ballard* (1963) 218 Cal.App.2d 295, 309 [32 Cal.Rptr. 233]; *People* v. *Zoffel* (1939) 35 Cal.App.2d 215, 223 [95 P.2d 160]; *People* v. *Westcott* (1927) 86 Cal.App. 298, 312-313 [260 P. 901]) and in civil actions (*Albert* v. *McKay & Co.* (1917) 174 Cal. 451, 456 [163 P. 666]; *Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 699 [39 Cal.Rptr. 64]; *Apparel Mfrs. Supply Co.* v. *National Auto. & Cas. Ins. Co.* (1961) 189 Cal.App.2d 443, 467-468 [11 Cal.Rptr. 380]; *Kroplin* v. *Huston* (1947) 79 Cal.App.2d 332, 343-344 [179 P.2d 575]).

Effective January 1, 1967, however, the Legislature undertook to abrogate that rule by adopting section 1235 of the Evidence Code. The section provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his

---

[2] Thus the prosecutor argued that Officer Cooney "pointed to the minor and asked Mr. Herrera if this is the minor or who did it. Mr. Herrera said, 'Yes, it was he.' He asked him again and he said sure. And he said yes, he was sure.

"Now, I would remind the Court this minor is not a stranger. Mr. Herrera knew him. He had just delivered the laundry to him. He was conscious enough to tell the whole story and he was asked twice and the minor was standing just a couple of feet away from him when he pointed him out."

[3] After seeking to draw adverse inferences from Herrera's direct testimony, the prosecutor concluded: "that in itself is enough proof when you add to that the identification made to Officer Cooney, the repeating of all of the details of all this attack to Officer Cooney. Officer Cooney testified he was conscious and coherent. Officer Cooney carefully asked him twice if it was the minor who did this and he said he was sure it was. And remember, your Honor, that Mr. Herrera knew this minor before. He wasn't pointing out a stranger to him. If there was any confusion in his mind, he certainly would have been careful about picking out somebody he knew before. He said he was the person who attacked him.

"Your Honor, I believe this case is well proved."

testimony at the hearing and is offered in compliance with Section 770."[4] Adopting the "unorthodox rule" espoused by a number of legal writers, section 1235 thus allows the substantive use of any prior inconsistent statement of a witness—whether in a criminal or civil trial and regardless of the circumstances in which it was made.[5]

In *People* v. *Johnson* (1968) 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111], we first addressed the question of the validity of section 1235 in a criminal setting. There the defendant was charged with incest committed with his 15-year-old daughter. At trial the daughter denied the alleged incest had occurred, and the defendant's wife likewise denied having observed any sexual activities between the defendant and their daughter. In the presence of the jury and over the defendant's objection, the prosecutor was allowed to read certain prior testimony to the contrary given by the defendant's wife and daughter before the grand jury: in that testimony the daughter charged that the defendant had sexual relations with her on the dates in question, and his wife asserted she had both observed and participated in such conduct. Each witness stated that her grand jury testimony was not true, and had been motivated by spite and jealousy and by pressure from the district attorney's office. In addition, the prosecutor was allowed to introduce into evidence certain extrajudicial statements by the defendant's wife and daughter similar to their grand jury testimony but made prior thereto to four different witnesses. The trial court ruled that section 1235 was applicable, and permitted the jury to consider the several prior inconsistent statements of the defendant's wife and daughter as proof of the matters asserted therein. The defendant was found guilty as charged.

On appeal, the defendant contended that by authorizing the use of the prior inconsistent statements of his wife and daughter as substantive evidence against him, "section 1235 deprived him of his right of confrontation guaranteed by the Sixth Amendment to the United States Constitution." (Fn. omitted; 68 Cal.2d at p. 651.) We agreed with the contention, and so held in a unanimous decision. Reviewing a number of United States Supreme Court decisions on related topics, we posited that a *constitutionally adequate* opportunity to cross-examine his accusers is an essential component of a defendant's right to confrontation. The defendant in *Johnson,* of course, had had no opportunity whatever to

---

[4]As the majority note, section 770 merely requires that the witness be afforded an opportunity to explain or deny his prior statement during the trial.

[5]For a historical and analytical overview of the controversy between the "orthodox" and "unorthodox" rules, see Read, *The New Confrontation-Hearsay Dilemma* (1972) 45 So.Cal.L.Rev. 1.

cross-examine the grand jury testimony and the extrajudicial statements against him at the time they were, given; his sole confrontation with the witnesses was at the trial itself.

Analyzing the matter from a practical viewpoint, we were of the opinion that cross-examination is not fully effective unless it can be undertaken immediately after the declarant's direct testimony and in the presence of the same trier of fact. We quoted with approval (at p. 656) the reasoning of the leading case of *State* v. *Saporen* (1939) 205 Minn. 358 [285 N.W. 898, 901]: "The chief merit of cross examination is not that at some *future* time it gives the party opponent the right to dissect adverse testimony. Its principal virtue is in its *immediate* application of the testing process. Its strokes fall while the iron is hot. False testimony is apt to harden and become unyielding to the blows of truth in proportion as the witness has opportunity for reconsideration and influence by the suggestions of others, whose interest may be, and often is, to maintain falsehood rather than truth." (Italics added.) And we concluded (at p. 655), "This practical truth is daily verified by trial lawyers, not one of whom would willingly postpone to both a later date and a different forum his right to cross-examine a witness against his client."

For these reasons we held in *Johnson* that the defendant's belated opportunity to cross-examine at the trial on the witnesses' prior statements was not constitutionally adequate, i.e., did not satisfy the demands of the confrontation clause of the Sixth Amendment. We reversed the judgment of conviction, and the United States Supreme Court denied certiorari. (393 U.S. 1051 [21 L.Ed.2d 693, 89 S.Ct. 679].)

In the following year we reiterated our *Johnson* holding in *People* v. *Green* (1969) 70 Cal.2d 654 [75 Cal.Rptr. 782, 451 P.2d 422] (hereinafter *Green I* ). There the defendant was charged with furnishing marijuana to Melvin Porter, a minor. At trial Porter testified that the defendant telephoned him and asked him to sell some unidentified "stuff," and he subsequently came into possession of 29 baggies of marijuana; the witness could not remember how he had obtained the marijuana, however, because he was taking LSD at the time. The prosecutor was then allowed to read into the record certain prior testimony given by Porter at the preliminary hearing. In that testimony the witness stated that at the direction of the defendant he had picked up the marijuana from its hiding place in the yard of the defendant's parents' house. Later in the trial the prosecutor was also allowed to introduce an extrajudicial statement made to a police officer by Porter, in which the latter asserted

that the defendant had personally delivered the marijuana to him. Both the preliminary hearing testimony and the extrajudicial statement were admitted as substantive evidence of the defendant's guilt pursuant to section 1235.

We again reversed the judgment of conviction by unanimous decision. The Attorney General conceded that Porter's extrajudicial statement to the police officer was inadmissible as substantive evidence under *Johnson,* but claimed that the preliminary hearing testimony was admissible because the defendant had an opportunity to cross-examine Porter at that hearing. We were of the opinion that as a practical matter such opportunity was constitutionally insufficient for at least two reasons. First, because of the narrowly limited purpose of the proceeding and the lack of time to investigate and prepare, the defendant at a preliminary hearing has neither the incentive nor the capability to subject prosecution witnesses to as searching a cross-examination as he does at trial: "The judge in preliminary proceedings is not required to be convinced of the defendant's guilt 'beyond a reasonable doubt,' but need only look for reasonable credibility. in the charge against him. *A fortiori* a witness' testimony, though the only evidence adduced, need not be convincing or credible beyond a reasonable doubt; and cross-examination which would surely impeach a witness at trial would not preclude a finding of probable cause at the preliminary stage. Even given the opportunity [citation], neither prosecution nor defense is generally willing or able to fire all its guns at this early stage of the proceedings, for considerations both of time and efficacy." (Fn. omitted; 70 Cal.2d at p. 663.)

Second, when the prior cross-examination at the preliminary hearing is simply read into the trial record from the cold transcript, the trier of fact is denied any possibility of observing counsel's manner of conducting that examination and the witness's demeanor in replying to his questions: "It is elementary that the role of cross-examination is not simply to elicit a bald contradiction of the witness' direct testimony, a rare occurrence at best, but to focus the attention of the trier of fact on the witness' demeanor as he relates his story and then defends his version against the immediate challenge of the opposing attorney. By cross-examination 'the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' [Citation.] It is because demeanor—attitude and manner—is a significant factor in weighing testimonial evidence

that it is axiomatic the trier of fact, before whom the witness testified and was cross-examined at trial, is the sole judge of the credibility of a witness and of the weight to be given his testimony." (*Id.,* at p. 662.)

Summing up, we reiterated that "the 'contemporaneous' cross-examination which alone, in the absence of a legal showing of necessity, can be considered fully effective and constitutionally adequate is cross-examination at the *same time* as the direct testimony is given, before the *same trier* as must ultimately pass on the credibility of the witness and the weight of the testimony. In short, cross-examination neither may be *nunc pro tunc* nor may it be *tunc pro nunc.*" (Fn. omitted; *id.* at p. 661.) We therefore held that the defendant's premature opportunity to cross-examine at the preliminary hearing on the witness' prior statement was not adequate to protect his right to confrontation at trial "guaranteed by the Sixth Amendment to the Constitution." (*Id.,* at p. 665.)

The Attorney General again petitioned for certiorari, and this time the United States Supreme Court took the case. In *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930], a divided court held that admission of a witness's prior inconsistent statement as substantive evidence does not violate the confrontation clause of the federal Constitution provided the statement was made in testimony at the preliminary hearing or, regardless of the circumstances in which it was made, provided the declarant testifies at the trial: in each instance the opportunity to cross-examine was deemed adequate for Sixth Amendment needs. The court therefore vacated our judgment and remanded the case for further proceedings.[6]

---

[6]On remand we addressed certain factual issues left to our resolution by the high court (399 U.S. at pp. 168-170 [26 L.Ed.2d at pp. 502-504]), and affirmed the conviction. (*People* v. *Green* (1971) 3 Cal.3d 981 [92 Cal.Rptr. 494, 479 P.2d 998] (hereinafter *Green II*).) Subsequent decisions of this court followed *Green* v. *California* in the Sixth Amendment context. (*People* v. *Bynum* (1971) 4 Cal.3d 589, 602 [94 Cal.Rptr. 241, 483 P.2d 1193], overruled on other grounds in *People* v. *Williams* (1976) 16 Cal.3d 663, 669 [128 Cal.Rptr. 888, 547 P.2d 1000]; *People* v. *Hathcock* (1973) 8 Cal.3d 599, 615-616 [105 Cal.Rptr. 540, 504 P.2d 476]; *People* v. *Williams* (1973) 9 Cal.3d 24, 38 [106 Cal.Rptr. 622, 506 P.2d 998]; *People* v. *Strickland* (1974) 11 Cal.3d 946, 954 [114 Cal.Rptr. 632, 523 P.2d 672].)

One of the issues on remand in *Green II* was whether Porter's failure of memory as to how he acquired the marijuana was "inconsistent," within the meaning of section 1235, with his prior testimony and statement describing that acquisition. In *People* v. *Sam* (1969) 71 Cal.2d 194, 208-210 [77 Cal.Rptr. 804, 454 P.2d 700], we had held that a witness's bona fide and total failure to remember a prior event is not "inconsistent" with a prior statement by him describing the event. In *Green II* we found that substantial evidence supported the trial court's finding that Porter's claim of memory loss was not bona fide, and we therefore held that his claim must be deemed an implied denial that the defendant furnished him with the marijuana, making his testimony "materially

Although the opinions each spend some time discussing precedent, the real disagreement between the United States Supreme Court and this court is over the practical value of the limited types of cross-examination available to the defendant in the *Johnson* and *Green* situations. Yet on close inspection the disagreement is essentially one of degree: the majority opinion of the high court repeatedly recognizes that such cross-examination provides a lower level of protection than traditional, contemporaneous cross-examination of the challenged statement before the ultimate trier of fact, but the court is of the opinion that such deficiencies are permissible for purposes of the Sixth Amendment. Thus the court lists three protections insured by confrontation—oath, cross-examination, and the availability of demeanor evidence—and acknowledges: "It is, of course, true that the out-of-court statement may have been made under circumstances subject to none of these protections. But if the declarant is present and testifying at trial, the out-of-court statement *for all practical purposes* regains *most of* the lost protections." (Italics added; 399 U.S. at p. 158 [26 L.Ed.2d at p. 497].) Again, the court is led to "discount as a constitutional matter" the loss of demeanor evidence in the circumstances: "The defendant's confrontation rights are not violated, *even though some demeanor evidence* that would have been relevant in resolving this credibility issue *is forever lost.*" (Italics added; *id.* at p. 160 [26 L.Ed.2d at p. 498].) Finally the court recognizes "It may be true that a jury would be in a better position to evaluate the truth of the prior statement" if it could have witnessed a contemporaneous cross-examination of the declarant; but the court is not convinced that such cross-examination "is *so much more effective* than subsequent examination that it must be made the touchstone of the Confrontation Clause." (Italics added; *id.* at pp. 160-161 [26 L.Ed.2d at pp. 498-499].)

In short, the majority of the high court were of the view that the shortcomings of the opportunities for cross-examination in *Johnson* and *Green* did not violate the Sixth Amendment because they were within the leeway permitted to the states under the Fourteenth Amendment. Indeed, the concurring opinion of Chief Justice Burger is devoted solely to this point. It emphasizes "the importance of allowing the States to experiment and innovate, especially in the area of criminal justice. If new standards and procedures are tried in one State their success or failure will be a guide to others and to the Congress." (*Id.*, at p. 171 [26 L.Ed.2d at p. 504].) And it reiterates (*ibid.*) that "The California statute meets the tests of the

---

inconsistent" with his prior statements. (3 Cal.3d at pp. 985-989.) In the case at bar the trial court did not reach the question of bona fides but did find that Herrera's lapse of memory was partial rather than total, and correctly distinguished *Sam* on that ground.

Sixth and Fourteenth Amendments, and accordingly, the wisdom of the statute is properly left to the State of California; other jurisdictions will undoubtedly watch the experiment with interest."

If the issue were purely a matter of statutory law, the "experiment" would of course be permissible. But the Legislature cannot "innovate" at the expense of impairing individual rights that are guaranteed by the California Constitution. We explained as much in *Johnson* when we said (at pp. 657-658 of 68 Cal.2d): "We do not here inquire, as a matter of the law of evidence, whether prior inconsistent statements of a witness should or should not be admitted as substantive proof. That disagreement between the academic community and the courts has been settled in this state by the Legislature's enactment of section 1235 of the Evidence Code, and we cannot review the wisdom of its solution. 'The power of the legislature to determine what is or is not competent evidence in civil or criminal cases is unquestionable.' [Citation.]

"But that power, while unquestionable, is not unlimited, and remains subject to the restrictions placed upon it by the *state* and federal Constitutions . . . . Indeed, in recognition of this principle section 1204 of the Evidence Code declares that 'A statement that is otherwise admissible as hearsay evidence is inadmissible against the defendant in a criminal action if the statement was made, either by the defendant or by another, under such circumstances that it is inadmissible against the defendant under the Constitution of the United States *or the State of California.*' " (Italics added and omitted.)

It is true the United States Supreme Court has now told us that section 1235 does not violate the federal Constitution. But as the foregoing quotation makes clear, that does not end the matter: it is also our obligation to measure the statute against the provisions of the Constitution of California. Article I, section 15, of that charter declares in relevant part that a person charged with crime in our courts has the right "to be confronted with the witnesses against the defendant." The issue, therefore, is whether section 1235 violates that guarantee; for the reasons stated at length in *Johnson* and *Green I,* I would hold that it does. I need not repeat those analyses in detail in order to demonstrate they are no less applicable to the right of confrontation declared by section 15 of article I. In fact, we concluded in *Johnson* (at p. 660 of 68 Cal.2d) that "Evidence Code section 1235, when applied against a defendant in a criminal case, results in the kind of erosion of the right of cross-examination that neither the United States Supreme Court *nor this court* will countenance." (Italics

added.) The Supreme Court is apparently willing to reach that result in the name of federalism; but our responsibility to enforce the California Declaration of Rights sets a higher standard for this court, and persuades me to adhere to our unanimous view in *Johnson* and *Green I* of the fatal deficiencies of cross-examination under section 1235.[7]

The Attorney General contends, however, that we are barred from so holding by the legislative history of section 15 of article I. Prior to 1974 there was no confrontation clause in the California Constitution. (See former art. I, § 13; *People* v. *Wallin* (1950) 34 Cal.2d 777, 781 [215 P.2d 1].) In that year the clause was added to section 15 of article I as part of the revision of the California Declaration of Rights submitted to the voters as Proposition 7 on the general election ballot. The Attorney General infers from this sequence of events that the clause was intended to have no content or meaning of its own, but to be merely a carbon copy of the federal guarantee. He concludes that in applying the California confrontation clause our courts are irrevocably bound by federal decisions construing the Sixth Amendment, and in particular by *California* v. *Green.*

The argument is unpersuasive for at least three reasons. First, although the confrontation clause of the Sixth Amendment was not made binding on the states until 1965 (*Pointer* v. *Texas* (1965) 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065]), in California law the right long predated that event. That the defendant is entitled to confront the witnesses against him in a criminal prosecution has been explicitly declared in our statutes since the earliest days of statehood. (Stats. 1850, ch. 119, § 11, p. 275; Stats. 1851, ch. 29, § 11, p. 212; now Pen. Code, § 686, subd. 3.) And even prior to its restatement as a separate guarantee of the California Constitution, our courts consistently recognized "the right of confrontation as being part of due process" under article I of that document. (*People* v. *Dozier* (1965) 236 Cal.App.2d 94, 101 [45 Cal.Rptr. 770].) *Pointer* itself declared that "the right of confrontation and cross-examination is an essential and

---

[7] The reasoning of *California* v. *Green* has drawn heavy criticism from the legal commentators. (See, e.g., Reutlinger, *Prior Inconsistent Statements: Presently Inconsistent Doctrine* (1974) 26 Hastings L.J. 361; Graham, *The Right of Confrontation and the Hearsay Rule: Sir Walter Raleigh Loses Another One* (1972) 8 Crim.L.Bull. 99, 117-122; Seidelson, *Hearsay Exceptions and the Sixth Amendment* (1971) 40 Geo.Wash.L.Rev. 76; Note (1971) 59 Cal.L.Rev. 580, 591-596; Note (1971) 39 Geo.Wash.L.Rev. 415, 423-427; Note, *The Supreme Court, 1969 Term* (1970) 84 Harv.L.Rev. 108, 114-117; Note (1970) 37 Brooklyn L.Rev. 207, 212-214.) In his penetrating analysis of the practical aspects of the problem, Professor Reutlinger refutes not only the specific arguments relied on by the Supreme Court but also various additional claims advanced by proponents of the unorthodox view.

fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law." (380 U.S. at p. 405 [13 L.Ed.2d at p. 927].) California citizens, of course, have been guaranteed due process of law by our fundamental state charters since 1849. (Cal. Const. 1849, art. I, § 8; Cal. Const. 1879, art. I, former § 13, now § 15.) Accordingly, in this respect the draftsmen of Proposition 7 did not write on a clean slate; and to the extent that the present confrontation clause continues prior California law, our courts are evidently not bound by federal Sixth Amendment decisions in construing it.

Secondly, the inference drawn by the Attorney General is contrary to the expressed intent of the draftsmen of Proposition 7, the California Constitution Revision Commission. In February 1970 its Article I Committee on the Declaration of Rights recommended "the adoption of a right to confront witnesses. Confrontation of witnesses is another Sixth Amendment right which is binding on states. However, the Committee feels that such basic guarantees *should flow from state law as well as federal law."* (Italics added.) (Rep. IV on Crim. Procedure, p. 7; see also comment, Cal. Const. Revision Com., Proposed Revision of Cal. Const., pt. 5 (1971) p. 24.) That recommendation, of course, was ultimately embodied in Proposition 7 and adopted by the voters four years later. The emphasized language clearly implies an intent of the draftsmen that the new California confrontation clause find its source in—"flow from"—the organic law of this state, and that it exist independently from—"as well as"—its federal counterpart.

Thirdly, the Attorney General disregards the salient fact that the same Proposition 7 that added the confrontation clause to revised section 15 of article I also added new section 24 to that article. Section 24 declares in relevant part that "Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution." In *People* v. *Norman* (1975) 14 Cal.3d 929, 939, footnote 10 [123 Cal.Rptr. 109, 538 P.2d 237], we explained that by adopting this section "The people of this sovereign state have directed that we give a meaning to constitutionally guaranteed rights which is independent of limits fixed by the United States Supreme Court as applicable to parallel rights guaranteed by the United States Constitution." By its terms, section 24 applies inter alia to the right of confrontation guaranteed by section 15. Thus the draftsmen of Proposition 7 cannot be deemed to have intended

to require that the California confrontation clause be construed identically to the confrontation provision of the United States Constitution.[8] Rather, the simultaneous adoption of section 24 signifies that although the language of the California clause is "parallel" to that of the Sixth Amendment, in fleshing out its few words for the protection of California citizens our courts are not rigidly constrained by "the limits fixed by the United States Supreme Court" on the operation of the federal provision.

It follows that the issue whether *California* v. *Green* is binding on us in the application of the California confrontation clause remains an open question. Its answer is governed by the settled doctrine that the federal decision is to be followed only if it provides no less protection to California citizens than is guaranteed by the state Constitution. (*People* v. *Pettingill* (1978) 21 Cal.3d 231, 248 [145 Cal.Rptr. 861, 578 P.2d 108], and cases cited; accord, *People* v. *Cook* (1978) 22 Cal.3d 67, 88 [148 Cal.Rptr. 605, 583 P.2d 130]; *People* v. *Wheeler* (1978) 22 Cal.3d 258, 285 [148 Cal.Rptr. 890, 583 P.2d 748].) From the preceding discussion it is apparent the test cannot be met: contrary to the conclusion reached herein, under article I, section 15, of the California Constitution, the high court decision in *California* v. *Green* permits a person charged with crime to be convicted on a prior inconsistent statement of a witness that was not subject to the safeguards of contemporaneous cross-examination before the ultimate trier of fact. Indeed, it even allows such a conviction—as in the case at bar—on a witness' unsworn accusation made in a totally nonjudicial setting.[9]

[8]Court of Appeal decisions to the contrary should be disapproved. (See, e.g., *People* v. *Bertoldo* (1978) 77 Cal.App.3d 627, 632 [143 Cal.Rptr. 675]; *People* v. *Contreras* (1976) 57 Cal.App.3d 816, 820 [129 Cal.Rptr. 397]; *People* v. *Browning* (1975) 45 Cal.App.3d 125, 143 [119 Cal.Rptr. 420], overruled on other grounds in *People* v. *Williams* (1976) *supra,* 16 Cal.3d 663, 669; cf. *People* v. *Morgan* (1978) 87 Cal.App.3d 59, 74 [150 Cal.Rptr. 712].)

[9]Ironically, if our courts were compelled by *California* v. *Green* to permit the latter scenario, persons on trial before them would receive even less protection than is afforded to defendants in the federal courts under the new Federal Rules of Evidence. Rule 801(d)(1)(A) provides that in federal trials a witness' prior inconsistent statement can be used as substantive evidence only if it was given "under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." It is interesting to note that as originally drafted by the Advisory Committee for the Proposed Rules of Evidence and submitted to Congress by the Supreme Court, the rule contained no such limitation and followed Evidence Code section 1235 in allowing the substantive use of any prior inconsistent statement; yet by the time the rule emerged from Congress, that body had amended it to impose the above-quoted requirement that the prior inconsistent statement be embodied in sworn testimony of the declarant. (See Graham, *Employing Inconsistent Statements for Impeachment and as Substantive Evidence: A Critical Review and Proposed Amendments of Federal Rules of Evidence 801(d)(1)(A), 613, and 607* (1977) 75 Mich.L.Rev. 1565, 1575-1582.) The amendment was responsive to the concern of the House of Representatives that "a defendant could be convicted solely on the basis of a

As the rule of *California* v. *Green* thus provides less protection than is guaranteed by California law, it should not be followed in our courts in applying the confrontation clause of article I, section 15, of the state Constitution.

Newman, J., concurred.

---

witness' alleged out-of-court statement, even though the statement was disputed by the witness' own testimony and no certain evidence existed establishing that the witness had accurately recounted the information in the statement and, more fundamentally, that the statement had ever been made." (*Id.*, at p. 1577.) In *Johnson,* of course, we expressed a similar concern. (See generally Bein, *Prior Inconsistent Statements: The Hearsay Rule, 801(d)(1)(A) and 803(24)* (1979) 26 UCLA L.Rev. 967.)