STATE of Missouri, Plaintiff–Appellant,

v.

Dwight COUCH, Defendant–Respondent.

No. 56120.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 29, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 7, 1990.

Application to Transfer Denied
Sept. 11, 1990.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-appellant.

Henry B. Robertson, St. Louis, for defendant-respondent.

SATZ, Presiding Judge.

The state appeals the grant of defendant's motion for judgment of acquittal notwithstanding the verdict of the jury. We reverse and remand.

Defendant was charged with four counts of forcible sodomy, § 566.060,[1] three counts of armed criminal action, § 571.015, two counts of robbery in the first degree, § 569.020, and one count each of kidnap-

---

1. All statutory references are to the Revised Statutes of Missouri, 1986, except as noted.

ping, § 565.110, sexual abuse in the first degree, § 566.100, and attempted forcible sodomy, § 566.060. These charges arose out of four separate attacks against four different victims. After conviction on nine of these twelve counts,[2] defendant moved for a judgment of acquittal notwithstanding the verdict. The trial court granted defendant's motion. The state appeals.

■ To determine whether to grant defendant's motion for judgment of acquittal notwithstanding the jury's verdict, the trial court was required to view the evidence and inferences in the light most favorable to the verdict and disregard all contrary evidence and contrary inferences. *E.g. State v. Overkamp,* 646 S.W.2d 733, 736 (Mo.1983). With the evidence so viewed, the trial court was then required to determine whether the evidence was sufficient for twelve reasonable persons to have found the defendant guilty as charged beyond a reasonable doubt. *E.g. State v. Porter,* 640 S.W.2d 125, 126 (Mo.1982). "A reasonable doubt is a doubt based upon reason ...," and "[p]roof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt." MAI–CR 3d 302.04; *State v. Nichols,* 725 S.W.2d 927, 930 (Mo.App.1987).

The trial court set out its analysis of the evidence and its reasons for granting defendant's motion in a written opinion. We have attached that opinion as an Appendix. We will refer to it from time to time.

### *Jurisdiction*

■ Defendant argues that this court has no jurisdiction because there "has been a judgment of acquittal after jeopardy attached," which precludes further prosecution by the state. Defendant has incorrectly applied this general principle to the specific facts here.

This case was tried to a jury which found defendant guilty. The trial court then entered a judgment of acquittal. Under the United States Constitution

> [w]hen a case has been tried to a jury, the Double Jeopardy Clause does not prohibit an appeal by the Government providing that a retrial would not be required in the event the Government is successful in its appeal.... When this principal is applied to the situation where the jury returns a verdict of guilt but the trial court thereafter enters a judgment of acquittal, an appeal is permitted. (citations omitted.)

*United States v. Jenkins,* 420 U.S. 358, 365, 95 S.Ct. 1006, 1011, 43 L.Ed.2d 250, 256 (1975).

The United States Supreme Court has also stated:

> the Double Jeopardy Clause bars a postacquittal appeal by the prosecution not only when it might result in a second trial, but also if reversal would translate into " 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged.' "

*Smalis v. Pennsylvania,* 476 U.S. 140, 145–146, 106 S.Ct. 1745, 1749, 90 L.Ed.2d 116, 122 (1986).

None of these circumstances is present here. Reversing the trial court's grant of defendant's motion simply requires a remand for a determination of the legal claims in defendant's motion for a new trial.

Our Missouri Constitution provides: no person "shall ... be put again in jeopardy ... for the same offense, after being once *acquitted by a jury.*" Art. 1, § 19 (emphasis added). Again, this is not the case here.

### *The State's Evidence*

The state's evidence included an audio-taped statement of defendant made to the police as well as the testimony of the alleged victims. Briefly summarized, in the general, nonspecific parts of his statement, defendant said he could not remember the specific dates of the incidents in question. He did remember the first incident "was in the first part of December or the last part of November." The incidents "went on for

---

**2.** The jury acquitted defendant on one count of first degree robbery. One count of armed crim-

inal action and the attempted forcible sodomy count were not submitted to the jury.

a couple of months", "for eight to ten weeks."

"Basically," he said, he would "drive around, pick one of them up, make a deal for some sex, basically head." He would start off "with an agreement with a hooker, and, then, the knife came out and, then, it was like, do what you are told and you won't get hurt." When asked, "what kind of knife did [he] use against the victims", he answered, "a steak knife, about 6 inches long."

He also described his method of operation in the following answers to questions.

Q. Did you ever force any one of them to do anything that they did not want to do or what they did not agree to do?

A. Yeah. There were a couple of them who didn't want to give me any head; but, they did.

Q. Did you have to force them?

A. Yeah.

Q. Did you have to use a knife?

A. I had to show it and more and talk tougher, and stuff like that; put, you know, the fear thing in them.

．　．　．　．　．

I don't know about any specifics but I would be willing to bet, at this point in time, I probably forced some of them to anal sex, too.

Q. How many do you think?

A. I guess—three or four, maybe—I don't know for sure.

Because of the "frustrations in his life," he said, he "chose to vent them on individuals who seemed to be easy targets."

### Vicki

Defendant was charged in Counts I and II, respectively, with forcible oral and anal sodomy of Vicki.[3] Count III charged him with armed criminal action in connection with Count II.

■ "A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion." § 566.060.1. The elements of lack of consent and forcible compulsion are, at times, almost mirror images of one another, and proving the latter often proves the former. Thus, as succinctly stated in our criminal instructions, "[a]ssent does not constitute consent if it is induced by force or duress." MAI–CR 3d 320.08.1. And, lack of consent may be established by showing the assent was caused by actual force or by fear induced by violence or threats of violence. *E.g. State v. Hannett*, 713 S.W.2d 267, 271 (Mo.App.1986).

"Forcible compulsion" means physical force that overcomes reasonable resistance, or a threat, express or implied, that places a person in reasonable fear of death, or serious physical injury. § 556.061(12)(a), (b) RSMo Supp.1989. "Serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body. § 556.061(26) RSMo Supp.1989.

■ Thus, for the state to make a submissible case on the sodomy charges, it had to show Vicki performed the sexual acts in question because of force or threats of force which she reasonably believed would cause her serious disfigurement or physical impairment. And, to show the defendant committed the crime of armed criminal action in connection with the crime of anal sodomy, the state had to show those sexual acts were caused "by, with or through the use ... of a dangerous instrument or deadly weapon...." § 571.015. The state did make this showing.

### State's Evidence

Vicki testified she was working as a prostitute from December 15 to December 20, 1986. One day during that period, a light colored, square looking car pulled over to the curb where Vicki was standing and she got in. Vicki was nine months pregnant at the time. The car pulled away, and, as they rode around, Vicki and the driver negotiated a price for oral sex. Af-

---

**3.** We refer to the victims by their first names to protect their anonymity. Two of the victims had the same initials and, thus, we were unable to use initials to identify them.

ter driving around more looking for a suitable location, the driver stopped the car on a side street.

Vicki told the driver she was pregnant, and he asked if she had milk in her breasts. She said yes and lifted her shirt to show him. "[T]hen," she testified, "... [he] put his arm around me and said—I couldn't see the knife. I just felt it. It was a sharp object on my throat and he said—he said, '... Do what I say and I won't hurt you.'" And, when she was asked whether she saw "where the object came from", she answered:

"No, it came out of nowhere. I don't know where it came from. I don't know if he had it in a seat or what, but there was definitely something sharp on my throat."

The driver then "made" Vicki perform oral sex on him while he held a knife to her throat. He then told her to take her pants off, and he performed anal sex. After that he told her to get out of the car, and he threw her clothes out. Vicki testified she had agreed to have oral sex with the man, but for a price and she was not paid.

In February, 1987, Vicki was arrested on a bench warrant for missing a court date. At the police station, she told the officers what had happened to her. She was taken to a lineup, and she identified defendant as the driver.

At trial, Vicki was shown state's Exhibits 2 and 13 and said they were pictures of a car that looked like the car defendant was driving.

### Trial Court's Analysis

In its opinion, the trial court focused on four parts of Vicki's testimony. According to the court, Vicki "testified that [1] she was working as a prostitute, ... [2] [she] agreed to perform acts of sodomy for pay, ... [3] she did not see a weapon, and ... [4] she did not report the alleged crimes until approximately two (2) months after the alleged crimes." "[D]efendant", the court concluded, "is at most guilty of the offense of Patronizing Prostitution, not the offenses of Forcible Sodomy and Armed Criminal Action."

The trial court, however, fails to refer to any of defendant's statement; and it does not tell us the specific elements of the crimes charged that the state failed to prove, nor does it tell us the reasons why the selected testimony necessarily shows the state failed to prove the unspecified elements.

### Our Analysis

Apparently, the trial court concluded the state failed to prove either the non-consensual or forcible compulsion elements of sodomy because Vicki, "a prostitute", testified "she agreed to perform acts of sodomy for pay."

On cross-examination, Vicki was asked: "You agreed to commit the act of oral sex, right?"; and, she did answer: "For money, yes." To state the obvious, this cannot be construed to be a consent to anal sexual intercourse, the charge in Count II. Moreover, at best for defendant, this is a conditional consent to perform oral sex "for pay." For the state, the favorable reasonable inference from this consent is that no consent to perform will be given and no oral sex will be performed without pay.

Furthermore, there was ample evidence the sexual acts were performed because of defendant's "forcible compulsion." Defendant admitted he "picked up" prostitutes, starting in early December 1986, and forced them to commit sexual acts by threatening them with a six inch knife and saying "Do what you are told and you won't get hurt."

This squares with Vicki's testimony. Admittedly, she said she could not see the "sharp object on [her] throat", but she did characterize it as a "knife"; "I couldn't see *the knife*", she said. Moreover, as part of his statement, defendant admitted that, during the first incident he remembered, he "held [the knife] right under [the victim's] neck", "right across the bottom of the victim's neck", "toward the throat." The approximate time of his first incident— "sometime in early December"—squares with the testimony of this incident with

Vicki—sometime between December 15 and 20.

Defendant's statement corroborated Vicki's testimony. Defendant's threat and use of physical force would have constituted forcible compulsion even if a weapon had not been displayed. *See, e.g. State v. Whittington,* 756 S.W.2d 188, 189–190 (Mo. App.1988). More important, perhaps, the jury could reach the reasonable conclusion that a six inch steak knife was a "dangerous instrument" within the meaning of § 556.061(9) RSMo Supp.1989.

Furthermore, Vicki's delay of two months in reporting the crimes against her is not determinative. Her delay in reporting is relevant only to her credibility, a determination to be made by the jury not the court. *State v. Newberry,* 605 S.W.2d 117, 121 (Mo.App.1980). Her delay was not so unreasonable that, as a matter of law, the existence of the crimes was vitiated. *State v. Ruhr,* 533 S.W.2d 656, 660 (Mo. App.1976). Nor is Vicki's entire testimony so "contradictory and in conflict with physical facts, surrounding circumstances, and common experience" that it is, a matter of law, not credible. *State v. Harris,* 620 S.W.2d 349, 353 (Mo. banc 1981); *see also State v. Ellis,* 710 S.W.2d 378, 380 (Mo. App.1986).

### Linda

Defendant was convicted of committing four crimes against Linda: Count IV—kidnapping, Count V—forcible anal sodomy, Count VI—sexual abuse, first degree, and Count VIII—armed criminal action. The trial court granted defendant's motion on these Counts because, the court stated, Linda did not identify defendant at trial and there was no physical evidence tying defendant to the crimes. On appeal, the state concedes there was insufficient evidence to submit Count V, forcible sodomy, to the jury.

### State's Evidence

On January 18, 1987, Linda was walking to the store to get some cigarettes, between Victor and Gravois. Although she had worked as a prostitute, she was not working as a prostitute that evening. As she was walking, a car pulled over and a man got out. He put a knife to her throat and said: "if [she does] everything he tells [her] to do, [she] won't get hurt.... Then, he put [her] in the car." He told her to put her head in his lap and drove off.

Although the exact sequence of the following events is not clear, they did take place. The man asked Linda if she had been drinking or was high. She told him no. He stopped the car, put a ski mask on her head, and told her to take her pants and shoes off. He then tied Linda's hands behind her back with a belt and drove off again.

At some time, when Linda's head was in the man's lap, she determined from what she heard and the movements of the driver that he was masturbating. He also asked her if she had ever had anal sex and then inserted his finger in her anus.

Finally, the man pulled over and told Linda she had a choice between having her nipples cut off or being burned. She told him to burn her. He burned her with a cigarette once on her left breast and twice on her right.

He then took her to an alley, told her to get out of the car and also told her her clothes and money would be out in the street. Linda had $20.00. She got out of the car, found her clothes in the street, but did not find her money.

She did not go to the police that night and did not seek medical attention for her burns. Apparently, she did not talk to the police about the incident until several weeks later. When she did talk to the police, she viewed a lineup. At no time during the trial did Linda identify defendant as the man who assaulted her. She did identify Exhibit 6 as a picture of the lineup she viewed. She also identified the man she picked out of the lineup in the picture by placing an X and her initials above his head.

### Trial Court's Analysis

The Court granted defendant's motion on Counts IV, VI and VIII because Linda [1]

"was unable to identify the defendant at trial, [2] ... she also delayed several weeks in reporting the alleged crimes, thus there was absolutely no physical evidence to tie the defendant" to these offenses.

### Our Analysis

■ The evidence at trial must show defendant was the person who committed the crime, but an in-court identification is not always required. *State v. Simmons*, 760 S.W.2d 521, 523 (Mo.App.1988). Each case is to be examined on its own facts looking at the totality of the circumstances. *State v. McIntosh*, 546 S.W.2d 756, 758 (Mo.App. 1977).

■ The first question about identification is whether defendant was identified as Linda's assailant. Both Linda and Vicki identified a man in a lineup. At trial, both Linda and Vicki identified pictures of the lineups they viewed. The pictures are of two different lineups. Each witness identified the man she picked out of the lineup and marked the photograph showing which man it was. Vicki testified defendant was the man she picked out of the lineup. Linda did not. The question thus becomes whether a jury could conclude beyond a reasonable doubt that the man marked by Vicki and identified by her as defendant is the same man marked by Linda. We think it could.

In both pictures, the man is dressed identically. He is wearing blue jeans, a pink T-shirt with writing on it, and a jacket. The face of the person marked is identical in both pictures. If not the same person, the two men are identical twins down to the hair style and color and moustache. Police officers testified the lineups in the pictures were held on the same day, February 10, 1987. From this evidence, twelve reasonable people could find beyond a reasonable doubt that the man marked by Linda as her assailant was defendant.

Defendant argues Linda's pre-trial, out-of-court identification alone is not sufficient identification to establish defendant as her assailant. *In re Johnny G.*, 25 Cal.3d 543, 159 Cal.Rptr. 180, 181, 601 P.2d 196, 197 (1979). The California courts believe out-of-court identifications that cannot be confirmed by the witness at trial lack sufficient reliability and substantiality to form the sole identification evidence. *Id.* 159 Cal.Rptr. at 182, 601 P.2d at 198. We are not persuaded by defendant's argument.

Defendant has not cited, and our research has not disclosed, any Missouri cases supporting his argument. Moreover, it appears that the rule, even in California, is limited to situations where the witness does not testify at trial about the identification. In *In re Miguel L.*, 32 Cal.3d 100, 185 Cal.Rptr. 120, 125, 649 P.2d 703, 707 (1982), the court explained that prior identifications out of court have not been subjected to cross-examination to test the veracity, bias and recollection of the witness. Here, the victim did testify at trial about her out-of-court identification. Thus, she was subject to cross-examination to test any aspect of the prior identification defendant chose to. More important, perhaps, the lineup identification was less than a month after the attack on Linda, but the trial testimony was a year and nine months after the attack: attack on January 18, 1987, lineup on February 10, 1987, trial on September 20, 1988. Thus, Linda's pretrial identification, so far as memory is concerned, is more reliable than her in-court testimony.

Moreover, here we have other evidence of defendant's guilt besides Linda's identification. Defendant, in his statement, admitted to attacking women with a knife. The details of the attack were similar in some respects to the details of the attacks on the other women, as shown later in this opinion. This evidence, when taken as a whole, is sufficient to identify defendant as the assailant. *State v. Simmons*, 760 S.W.2d at 524.

■ Defendant also raises an issue about Count VI, charging him with sexual abuse in the first degree.[4] Defendant ar-

---

4. Defendant did not make this argument to the trial court. We will affirm if the result below, though reached for an incorrect reason, can be upheld for another reason. *Durham v. State*,

gues the touching shown here was not the type of conduct criminalized by § 566.100. Defendant argues the Comment to § 566.010 shows the legislature intended the sexual abuse statute to apply to fondling.

A person commits first degree sexual abuse if he subjects another person to whom he is not married to sexual contact without that person's consent by forcible compulsion. Section 566.100.1(1). Sexual contact is the touching of the genitals or anus of any person or the breast of a female for the purpose of arousing or gratifying sexual desire. Section 566.010.1(3) RSMo Supp.1989.

The Comment states " 'Sexual Contact' *may* involve fondling through garments." (emphasis added) We do not read this language as limiting the contact to fondling but, rather, giving one example of contact as defined by the statute. Moreover, § 566.100 shows sexual contact means more than mere fondling. Sexual abuse in the first degree is a class C felony if the actor inflicts serious physical harm in the course of the crime. Section 566.100.2. If sexual contact were limited to fondling, it would be difficult to imagine how serious physical harm could result.

### Lisa

Defendant was convicted of committing two crimes against Lisa: Count XI—forcible anal sodomy and Count XII—robbery, first degree. As to these crimes, the trial court's grant of defendant's motion rests on the quality of the evidence establishing defendant to be the assailant.

### State's Evidence

■ In December, 1986, Lisa was working as a prostitute to support her drug habit. She usually worked at the corner of Jefferson and Pestalozzi Streets. On December 21, she was working to get enough money to make a drug purchase. She had completed two "tricks" but needed one more to get the money she needed.

751 S.W.2d 808, 811, n. 4 (Mo.App.1988). We

A man drove by in a beige four-door. The car looked to Lisa like a detective car. The car stopped, and the driver asked Lisa if she wanted a date. She said yes. They drove around and Lisa questioned the man trying to determine whether he was a police officer. They eventually negotiated a price of $20.00 for oral sex. Lisa insisted on payment before commencing and the man complied.

She suggested a location but the man said he already had a place in mind. They stopped in an alley next to a dumpster. During this period, Lisa had noticed a "City sticker" on the windshield of the car.

When Lisa began to commit the oral sex act, she felt a knife against her throat. Although she did not see the knife, she knew it was a knife because it was cold, sharp and hard and the man pressed it against her neck. The man said "Don't move. Do what I say and I won't hurt you." He told Lisa to keep her head down to the floor and not to look up. He then told her to turn around and take her jacket off. He raised her shirt up and told her to keep her head down and face the passenger door.

The man then told Lisa to take her pants off, and, when she did, he threw them on the floor of the car. The man tracked the sharp object up and down Lisa's side. He then returned it to her neck, and, then he sodomized her.

After he was done, the man told Lisa to give him all her money. He then threw her clothes out of the car and said he would throw half her money out of the car by a dumpster in the alley. When Lisa got out of the car, she quickly dressed but did not find any money by the dumpster.

Lisa did not call the police and did not go to a hospital. A few days later, police officers approached her to talk about what happened to her. At first, she said nothing had happened to her, but she "broke down" and told them. She then went to the station and gave a statement.

Then, sometime in the beginning of February, 1987, the same man came back. He

therefore address defendant's argument.

approached her the same way as before, driving by and asking if she wanted a date. Lisa said no and the man drove up the street, made a U-turn and came back down. At that time, Lisa noticed the City sticker she had seen before and realized it was the same car. She went to her car and followed the other car, eventually getting the license number of the car.

She gave the license number to the police and also described the car to them. She also gave a general description of the man. She looked at a lineup, but was unable to identify anyone. She was taken to the police towing lot, and, as she was driven past the cars in the lot, picked out the car of the person who assaulted her. At trial, she identified state's Exhibit 2 as a picture of the car, and identified state's Exhibit 11 as a picture of the sticker in the window of the car. The car in Exhibit 2 is a light colored four-door vehicle. She also identified state's Exhibit 4A as the glasses of the man who sodomized her.

On cross-examination, Lisa testified about various convictions she had had. She testified she didn't see a KSHE sticker on the car. She also testified she spent 10 to 15 minutes talking to the man and, although he had a short sleeved shirt on, she did not notice any tattoos. She also testified about the lineup she viewed. She said that, when she viewed the lineup, she said it could be one of two men but she was not sure. She did not specifically point out anyone.

Detective Michael Dueker of the St. Louis Police Department testified. He talked to Lisa on February 6 about what happened to her. On February 8, he said, Linda came to the station with a license number of a car she took down from a car she believed the assailant had been driving. The license was issued to Dwight Couch, defendant here. After getting an address for Dwight Couch, Detective Dueker, along with other officers, went to the address and defendant was arrested.

Detective Daryl Cordia of the St. Louis Police Department also testified. He testified Exhibit 2 was a picture of defendant's car and Exhibit 4A was defendant's glasses.

Summarizing this evidence in the light most favorable to the verdict, the identification of defendant as the assailant was: Lisa identified the car her assailant drove; that car belonged to defendant; Lisa wrote down the license number of her assailant's car; that license plate was issued to defendant; Lisa identified the glasses her assailant wore; those glasses belonged to defendant.

In addition to Lisa's testimony identifying defendant's car and glasses, the testimony of the two other victims, particularly Vicki, was probative of defendant's identity as Lisa's assailant. Evidence of a defendant's illicit sexual relations with persons other than the prosecuting witness is generally inadmissible for the purpose of showing the defendant's propensity to commit such offenses. *State v. Young,* 661 S.W.2d 637, 639 (Mo.App.1983). However, evidence of sexual offenses against others is admissible for proper purposes, such as establishing the defendant's identity as the perpetrator of crimes so distinctive as to earmark them as the defendant's handiwork. *Id.*

The details of the attack on Lisa are similar in a number of respects to the details of the attack on Vicki and, in some respects, to the attack on Linda. Both Vicki and Lisa were working as prostitutes on Jefferson Avenue. In both cases, a price for oral sex was negotiated. In all three assaults the assailant pulled a knife on the victims, placed it to their throats and said "Do what I say and I won't hurt you," or words to that effect. The assailant forced Vicki and Lisa to have anal sex in the front seat of the car. In all three cases the assailant made the victims leave the car without their clothes on and threw the clothes out.

The totality of this evidence is sufficient to support a reasonable inference that defendant was Lisa's assailant. *State v. Lingar,* 726 S.W.2d 728, 733 (Mo. banc 1987), *cert. den.* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987).

The trial court erred in granting defendant's motion for acquittal on Counts I through IV, VI, VIII, XI and XII. These judgments are reversed and the cause is remanded for further proceedings consistent with this opinion.

SMITH and GRIMM, JJ., concur.

## APPENDIX

COURT'S RULING ON THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT OF THE JURY OR IN THE ALTERNATIVE FOR A NEW TRIAL

Following a review of the testimony adduced during the course of the trial, the Motion submitted by the defendant and the arguments of the parties during a hearing on the motion, this Court finds that it must grant the defendant the relief he seeks pursuant to Missouri Supreme Court Rule 27.07(c).

The defendant was charged under Counts I, II and III with the offenses of two counts of Forcible Sodomy and one count of Armed Criminal Action, the alleged victim being one Vickie [sic] _____. [Vicki] testified that she was working as a prostitute and agreed to perform acts of sodomy for pay, that she did not see a weapon, and further that she did not report the alleged crimes until approximately two (2) months after the alleged crimes. A person commits the offense of forcible sodomy under Section 566.060 RSMo is he has deviate sexual intercourse with a person to whom he is not married, without the consent of the person and by the use of forcible compulsion. Viewing the evidence in a light most favorable to the State, the defendant is at most guilty of the offense of Patronizing Prostitution, not the offenses of Forcible Sodomy and Armed Criminal Action.

It is hereby the Judgment and Ruling of this Court that the defendant's Motion For Judgment Of Acquittal Notwithstanding The Verdict Of The Jury be sustained as to Counts I, II and III.

As to Counts IV, V, VI and VIII the defendant was charged with the offenses of Kidnapping, Forcible Sodomy, Sexual Abuse First Degree and Armed Criminal Action, the alleged victim of these offenses being one Linda _____. [Linda] was unable to identify the defendant at trial, further she also delayed several weeks in reporting the alleged crimes, thus there was absolutely no physical evidence to tie the defendant to the offenses alleged.

It is hereby the Judgment and Ruling of this Court that the defendant's Motion For Judgment Of Acquittal Notwithstanding The Verdict Of The Jury be sustained as to Counts IV, V, VI and VIII, the jury found the defendant not guilty under Count VII for the offense of Robbery First Degree.

The defendant was charged under Counts IX and X with the offenses of Attempted Sodomy and Armed Criminal Action, the alleged victim being one Ms. Pam _____. The State during the course of the trial did not produce any evidence concerning these charges nor did the State seek a severance of these Counts or file a Memorandum of Nolle Prosequi. The State did not preserve these Counts, thus as to these charges the Court has no other option but to discharge the defendant for the State presented no evidence to support the charges.

The defendant was charged under Counts XI and XII with the offenses of Sodomy and Robbery First Degree, the alleged victim of these offenses being Ms. Lisa _____. [Lisa] did not identify the defendant ever, her testimony primarily consisted of the fact that the defendant's car was similar to the car of her attacker and a KSHE in the car was similar to the sticker in the assailant's vehicle, she had previously positively identified another individual as her attacker. The testimony of [Lisa] is insufficient to sustain these convictions.

It is hereby the Judgment and Ruling of this Court that the defendant's Motion For Judgment Of Acquittal Notwithstanding The Verdict Of The Jury be sustained as to Counts XI and XII.

This Court will note that the defendant did make a taped statement, however that

statement did not contain admissions to the offenses charged. The statement on its own is not sufficient to substantiate the offenses charged.

In view of this Court's ruling on the defendant's Motion For Judgment Of Acquittal Notwithstanding The Verdict Of The Jury the defendant's Motion in the Alternative for a New Trial is hereby rendered Moot.

SO ORDERED:

(s) Evelyn M. Baker
Evelyn M. Baker, Judge